Mr. Bloom, if I may call? May it please the Court? In January of this year, the Supreme Court provided another reminder to lower courts, an admonition if you will, about the need to be careful in scrutinizing questions of whether a public official is entitled to qualified immunity. The Supreme Court held in White v. Fawley, and I quote, In the last five years, this Court has issued a number of opinions reversing federal courts in qualified immunity cases. Today, it is again necessary to reiterate the longstanding principle that clearly established laws should not be defined at a high level of generality. As this Court has explained decades ago, the clearly established law must be particularized to the facts of this case. And I submit, Your Honor, that's exactly what the lower court did not do correctly here. In White v. Fawley, the Supreme Court went on to say, in this case reversing a court of appeals, The panel majority misunderstood the clearly established analysis. It failed to identify a case where an officer acting under similar circumstances as the defendant was held to have violated the Fourth Amendment. And instead, the majority relied on incited cases, which as noted above, lay out the excessive force principles at only a general level. I submit, Your Honors, that's exactly what happened here. Neither the district court nor Mr. Lyons has identified any case or a robust consensus of cases of persuasive authority where a teacher complaining about grading to school administrators was held to have violated the First Amendment. In the absence of that precedent, it is beyond debate that, well, excuse me, in the absence of that precedent, it could not be beyond debate that Dean Vaught or Mr. Basa could have understood that after 10 months, 10 months of complaining about the student-athlete who was appealing the grade that Mr. Lyons had given him, had suddenly reversed course and was complaining about something other than that student when he recounted allegedly what happened in the meeting with the chancellor. In the absence of such authority, which must have existed as of 2011, the general statements relied upon by Mr. Lyons and the district court are inherently incapable of giving a fair and clear warning to the defendants. And in the context of the particularized facts of this case, when we take into account the 50 paragraphs that were in the First Amendment complaint that Lyons omitted from the Second Amendment complaint and marry that to paragraph 18 of the Second Amendment complaint in which Mr. Lyons alleges, and I quote, Lyons' cause of action against defendants stems from the preferential academic treatment afforded student-athletes on UMKC's campus, one of which challenged a grade received in Lyons' classes. When you look at that and marry it to the facts in context and the particular facts of this case, there can be no reasonable debate that the defendants should have clearly known that Mr. Lyons was engaging in alleged protected conduct. Now, what is the role of the chancellor in the University of Missouri system? Actually or as alleged? Well, as alleged. Why don't you tell me both? Well, we know that as alleged, the chancellor said supposedly that his role was simply as a fundraising position. That's not accurate. His job is to oversee and manage the administration, including the dean and Director Bassa. He was within the chain of command, so to speak. I mean, is it analogous to a university president? Well, is there a chancellor over the entire system or does each individual university campus have an individual chancellor? I can only speak to this university or the curators of the University of Missouri system. As I understand it, they have a chancellor of each campus. So, for example, Kansas City, St. Louis, Rolla, and Columbia, each of whom have a chancellor that report up to a president of the system, as I understand it. I mean, I'm very familiar with the Iowa system where you have each university, University of Iowa, Iowa State, Northern Iowa, they each have a president. So I would take it that the chancellor would be analogous to the top, or she is the top person at that university. In this case, it was Leo Morton, and Leo Morton was the top-level administrator at the University of Missouri at Kansas City in 2011. And when we look at the context of this case, and I don't think it's lost on the court, but I think it's worthy of emphasizing it, and we look at the paragraphs that were in the newly alleged Second Amendment complaint, where now Lyons goes back to Vassa and Vaught and is now complaining supposedly of this broad, systemic, preferential treatment given to students. What's missing still from the Second Amendment complaint is any example other than the example that took up 50 paragraphs in the First Amendment complaint, begging the question, how could Vassa and Vaught have reasonably understood in November of 2011 that when Mr. Lyons was supposedly complaining about preferential treatment, he was doing so in anything other than the context of his job? Well, if your argument today is that the chancellor is in the chain of command, so to speak, and that this is just a continuation of the complaints that were made to lower-level officials, why is it that, as I understand it, you concede that that is protected conduct? Because we don't need to get into that debate. Frankly, it's a hill we don't need to climb and get over because we have the two-prong analysis on determining qualified immunity. I think it's worthy of debate as to whether it's protected speech. We could have a robust discussion about that. In fact, the fact that we're debating in the second prong establishes that it was not a question beyond debate. So I don't need to win the first element to prevail on the second element. And that's why we went ahead and, for purposes of our argument, only conceded that it could be protected speech because we still are left with, and I'm still waiting for Lyons' counsel to cite to us, those cases, whether in the Eighth Circuit or elsewhere, where we can look at a teacher complaining in the context of grading to his school administration that that is First Amendment-protected conduct. And because there isn't any such authority, and certainly there wasn't any as of 2011, that merits and mandates a finding that defendants are entitled to qualified immunity. Well, we can ask your opponents, but as I understand it, their theory of the case now is that they acknowledge the initial complaints to the lower-level officials and the grading committee and so on was not protected conduct, but that because the chancellor is at a different level and they're a different position, and coupled with the fact that they brought some community leaders with them, that that became protected conduct. I think that's the theory of the case. I think that is what they're alleging, but that still doesn't answer the question, which is what case, and I'm going to quote back to the Supreme Court, where do they identify a case, and I'm going to paraphrase now, where a school administrator acting under similar circumstances as Dean Vaught and Mr. Vassa was held to have violated the First Amendment? That's at page 552 of White v. Pauley. I just paraphrased in the facts of this case. And because they are unable to cite to that case, or as Judge Loken quoted in a fairly recent unqualified immunity case, there is no robust consensus of persuasive authority. Robust consensus of cases of persuasive authority. Couldn't have said it better myself. In the absence of that body of case law, which there is not, analogous to this situation, qualified immunity attaches. And I'm going to do something remarkable now and ask the court to, with six minutes left of my time, to hold once again, as it did previously, that defendants are entitled to qualified immunity. But in this circumstance, Your Honors, I'm going to ask that the court, in addition to doing that issue, a mandate. And the mandate should be that the district court dismiss this action. And I will reserve the rest of my time. Good morning. My name is Joni Botner and I, along with my co-counsel, Brian McClellan, represent Mr. Lyons, the appellee in this case. You're going to have to speak up. All right. This is a case of qualified immunity. We're at the motion to dismiss stage. As opposing counsel has conceded, we're not arguing over the first prong of the analysis for qualified immunity. We're essentially arguing over the second prong and whether it's been clearly established under the law that what appellants have done is retaliated against our client in speaking to a matter of public concern outside his normal job duties. And as long as that outweighs the government's interest in rendering efficient services, it's protected. Appellants have mentioned that they believe the law has changed and that there's a distinction between pre-Garcetti and post-Garcetti. And this court has even found in Belk v. Elden that it did not change the law. It merely clarified the law. It clarified the prong that determines whether the person is speaking as a citizen or as an employee. So it did not change the law. So making distinctions between case law before Garcetti and after Garcetti doesn't change our analysis here. Arguing that it needs to be as particularized as what appellants state would essentially chill speech in the First Amendment. All of the case law that is cited regarding the particularized content and that you need to have a case that's more analogous than what we have cited, they all deal in the Fourth Amendment context. And even Mullinex at the Supreme Court level, citing Saussure, said that when they talked about the context of the case, especially in the context of the Fourth Amendment, is where it's required to be more particularized. Well, we have said, at least I have said for a panel, that denying qualified immunity would be rare when you get to the conic pickering analysis because it's so open-ended and convoluted and complex that basically nothing is clearly established. Exactly. And that's what we're arguing here. And if that's true, then the district court failed to appreciate First Amendment qualified immunity jurisprudence. Well, and we would say... And I think Lane is a good example, and I know how you've distinguished Lane, and, yeah, that's a legitimate argument, but I think Lane was simply taking the white versus poly recent line of cases criticizing lower courts for denying qualified immunity and saying that even applies in the First Amendment context to a court, to a situation where the lower courts clearly got the protected speech wrong. Well, and we would contend that you don't have to have a particular, as particularized as what appellants are saying here. You don't want to have an overgeneralized, but every case that we have in the Eighth Circuit where qualified immunity was found in a First Amendment context that we understand is that it was at the generalized level that we're saying. It's not generalized, but it's just always been clearly established that an employee has the right to speak on matters of public concern as long as it's not part and parcel or pursuant to his duties. And I think that it's getting too particularized if we set a precedent today that you have to have a case in the academic arena in which a supervisor or an administrator talks to, fires someone, retaliates against someone based on their right to exercise something outside of their duties. It would set the precedent that we would never, no one would ever be on notice of what's clearly established. But it seems to me the plaintiff went out, quote, outside his duties every step of the way. All of the appeals. All of the appeals that you now concede were not protected under Garcetti were, quote, outside his duties, outside his classroom duties, outside his grading duties. He was griping because his decisions got second-guessed and ultimately overruled. And we would say to that. So when he takes that complaint to the media, to the ACLU, or with the ACLU goes to the chancellor or on local TV, all of a sudden this becomes protected even though it's the same beyond outside the scope of his duty to complain? We would respectfully disagree, Your Honor. We think there is a distinction between the appeal process because it's still contained within the classroom. And there is case law. I thought the appeal process, it was not clearly established. He went around to everybody he could see might be in the chain of command to undo what the appointed committee was doing. The speech that is protected, which appellants concede is protected in this case, is a speech dealing with the widespread issue. It's not the speech pertaining to his student and the appeals process. And that's why we've conceded that that speech pertaining to the student and the appeals process isn't protected because we state that it is pursuant to his duties. However, once the appeals process was complete, that's when, because of Mr. Lyons going to other people and talking about this, that's when he became aware through discussions with other people, through other professors, that it's a widespread issue. And that's when it became protected speech, when his discussion was more generalized. And that's why he brought the community leaders in. He went to the very top of the chain of command because this is a widespread issue. And the university could have been sanctioned for this, could have been investigated for this. And so that's when it becomes protected speech. So when in turn Mr. Lyons thereafter goes to Bass and Vaught, the administrators who have the authority to make the decision on continuing his employment, and tells them the exact details of that conversation, he was speaking to them in the context of protected speech. Additionally, as appellants. It almost seems like what you're saying here is that under Garcetti, if you're a, quote, unquote, whistleblower, and report misconduct within the chain of command, you're not, generally speaking, under Garcetti, you're not going to be protected. But a lot of states have whistleblower laws, and there are federal whistleblower laws, which give you protections that are outside the constitutional protections. Is there any such thing in Missouri? Is there any whistleblower law? If you're saying what he is is a whistleblower, what you're basically describing is a whistleblower. He's identified misconduct within the university that could result in financial loss, sanctions, investigations, and as a concerned employee went to the chancellor to tell him about it. To me, that's the classic definition of a whistleblower. Is there any such protections? There are protections, but we don't believe that that's applicable in this case because even though appellants contend that he's within the chain of command, Mr. Lyons never had to report directly to the chancellor. He went outside the chain of command is our contention. And that's a factual issue that we have not gotten to yet as far as what exactly the role of the chancellor is in the chain of command at this point because we're at the motion to dismiss stage. We haven't had discovery. So that's, you know, I understand what you're getting at, but we don't think that that is relevant at this stage. Appellants also say they talk about overgeneralization. Other avenues of speech are always, the existence of that is always relevant in every First Amendment context  So there are whistleblower laws in Missouri. Not invoked here, I think. No, no, Your Honor. Even though appellants contend that we are oversimplifying or overgeneralizing the clearly established, they in turn oversimplify the issue. They just say there's grading issues here. But that oversimplifies what we were discussing. Yes, there were grading issues pertaining to one student initially, but the protected speech, which they already have conceded is protected speech, is pertaining to widespread preferential treatment for student athletes. The Third Circuit in Gorham contended that, you know, grading in certain contexts, in other cases, in the Eastern District of Pennsylvania, Eisen in 2002, talked about grade inflation and academic fraud. And there's a distinction between doing something that pertains to the classroom or your own students as far as grading and doing something from an administrative standpoint. Let's say, you know, you want to put, you're told you have to give an incomplete as opposed to failing a student because you have to follow the processes, the administrative processes. That's very distinct from the issue that's at hand here when we're talking about grade inflation and academic fraud and the widespread issue not pertaining to one student within your classroom but pertaining to the university as a whole. So that oversimplifies the issue in that regard. Also, in discussing context, there's two places at which it's appropriate to discuss context in a situation. One is determining whether it's clearly established. And as we've already mentioned, it only applies to the law in this context at this point in the process with a motion to dismiss. We're not at the summary judgment stage. And we contend that, yes, there's a public policy reason why these Fourth Amendment cases have said that you have to have such particularized detail. We don't have any First Amendment cases yet that say you have to have that detail. Thus, the law was clearly established in 2011 and 2012 as far as the First Amendment goes. The other point at which you can use context and it's appropriate is determining whether it's of public concern. We've already conceded that this speech is protected. Thus, it's inappropriate at this stage under BELC to dismiss or analyze on this issue. We also understand that at this stage in the litigation, essentially, the only issue we're talking about is whether there's qualified immunity. And that is based on whether it was clearly established in the law. The case law in the Eighth Circuit pertaining to the First Amendment, there's not a single case that tries to make the particularized distinctions on the facts, even if there's no analogous, directly analogous case, does not make the distinction. And there's case law in the Eighth Circuit that talks, that didn't have a precedent that is being requested by appellants today. At this time, I am going to request that the court affirm the district court's opinion denying the motion to dismiss. I'm going to make two points, and then I'm going to sit down, Your Honors. The first point is, as I believe this panel is aware, the Eighth Circuit certainly draws the same analysis with regard to First Amendment cases under 1983 as it does Fourth Amendment cases under 1983. And at the risk of opening sore wounds, Dempsey v. City of Omaha speaks to that issue. The second point I'd like to make is that when we talk about the plaintiff's inability to point to a robust body or consensus of cases involving a teacher complaining about grading as being First Amendment, that's actually a characterization in favor of the plaintiff. Because if we really wanted to be, as counsel just said, overly particularized, we'd be framing the question as, can they point to any cases where a teacher complaining to administrators about academic preferential treatment of student athletes is clearly established as a violation of the First Amendment? And we have not even framed the question that narrowly. Instead, we broadly invite the plaintiff to point to cases that existed as of 2011, the cases that counsel just quoted or not. I assume it was decided in 2012. So any cases where a lecturer or a teacher complaining about preferential treatment in grading and then citing as a sole example the treatment of his own student could constitute protected activity for which the defendants obviously should have known that they were treading on his rights. And in the absence of that authority, Your Honors, I respect the request that defendants are absolutely entitled to qualified immunity and we put this case to an end and ask that you reverse the district court with instructions to dismiss this action. Thank you. Thank you, counsel. The case has been well briefed and argued. Thank you. I'll take it under advice. Thank you.